**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

ANDRE DESHON JENKINS,

      Petitioner,

v.                                Case No. 3:23-cv-763-TJC-LLL

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,

      Respondent.

_____

**<u>ORDER</u>**

## I.    <u>Status</u>

Petitioner Andre Deshon Jenkins, an inmate of the Florida penal system, initiated this action by filing a pro se Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus. Doc. 1. Petitioner challenges a state court (Duval County, Florida) judgment of conviction for second-degree murder. He is serving a sentence of life imprisonment. Respondent filed a Response with exhibits, arguing that the Petition is untimely and requesting dismissal of this case with prejudice. Doc. 5.[1] Petitioner filed a Reply. Doc. 6. This case is ripe for review.[2]

---

[1] The Court will cite exhibits by document and page number as assigned by the Court's electronic case management system.

[2] "In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." <u>Jones v. Sec'y, Fla. Dep't of Corr.</u>, 834 F.3d 1299, 1318 (11th Cir. 2016) (citing <u>Chavez v. Sec'y Fla. Dep't of Corr.</u>, 647 F.3d 1057, 1060 (11th

## II.    One-Year Limitation Period

The Antiterrorism and Effective Death Penalty Act (AEDPA) amended 28 U.S.C. § 2244 by adding the following subsection:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have

---

Cir. 2011)). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id. The Court finds that "further factual development" is unnecessary. Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003). Thus, an evidentiary hearing will not be conducted.

2

> been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

### III.  Analysis

#### A. Timeliness of Petition

On September 13, 2016, following a jury trial, the trial court adjudicated Petitioner guilty of second-degree murder and sentenced him to life imprisonment. Doc. 5-1 at 203-09. Petitioner appealed. Id. at 216. On November 30, 2018, the First District Court of Appeal (First DCA) issued a written opinion affirming his conviction. Doc. 5-10. The First DCA held that the trial court "correctly applied the evidentiary standards" to Petitioner's "motion for new trial." Id. at 1-2.

Because the First DCA issued a written opinion, Petitioner could have sought discretionary review with the Florida Supreme Court within thirty days. See Fla. R. App. P. 9.120(b); see also Florida Star v. B.J.F., 530 So. 2d 286, 288 (Fla. 1988) (holding that the Florida Supreme Court has subject-matter jurisdiction to review any decision of a district court of appeal that expressly addresses a question of law within the four corners of the opinion). Petitioner

3

did not seek review with the Florida Supreme Court. Doc. 5-11. Therefore, his conviction became final on December 31, 2018, the deadline to seek such review. See Gonzalez v. Thaler, 565 U.S. 134, 137 (2012) ("[F]or a state prisoner who does not seek review in a State's highest court, the judgment becomes 'final' on the date that the time for seeking such review expires."); Spivey v. Sec'y, Fla. Dep't of Corr., No. 3:15-cv-23-MMH-JRK, 2019 WL 10749420, at *1 (M.D. Fla. Jan. 29, 2019) (finding that petitioner's judgment became final after the expiration of his time to seek discretionary review in the Florida Supreme Court because the First DCA issued a written opinion on direct appeal).

The one-year limitation period began to run on January 2, 2019. See Mobley v. Sec'y, Fla. Dep't of Corr., No. 23-10388, 2023 WL 9530737, at *1 (11th Cir. Sept. 5, 2023) (finding that, where petitioner's "convictions became final on December 31, 2012," the "one-year limitations period began to run on January 2, 2013"). The limitation period ran for 211 days until August 1, 2019, when Petitioner moved for postconviction relief under Florida Rule of Criminal Procedure 3.850. Doc. 5-12 at 6. Following an evidentiary hearing, the postconviction court denied the motion. Id. at 80-88. The First DCA affirmed in an unelaborated decision, and the mandate issued on December 12, 2022. Doc. 5-15.

The limitation period resumed the next day, December 13, 2022. Petitioner then had 154 days—or until May 16, 2023—to seek federal habeas

relief. He missed the deadline by six weeks, filing his Petition on June 28, 2023. Doc. 1 at 1, 29. Therefore, this action is untimely.[3]

### B. Actual Innocence

Petitioner does not dispute that he missed the one-year deadline. Instead, he appears to contend that he is entitled to the actual-innocence exception to AEDPA's statute of limitations. Doc. 6 at 1-3. "[T]enable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" McQuiggin v. Perkins, 569 U.S. 383, 386 (2013) (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)). "To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence— whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Schlup, 513 U.S.

---

[3] On March 6, 2023—before the limitation period expired—Petitioner filed a successive Rule 3.850 motion. Doc. 5-16. The postconviction court ruled that the motion was "untimely in that it was filed more than two years after [Petitioner's] conviction became final." Doc. 5-17 at 2. Because the motion was "untimely" under Florida law, it was not "properly filed" and thus could not "toll the limitation period." Walton v. Sec'y, Fla. Dep't of Corr., 661 F.3d 1308, 1311 (11th Cir. 2011). This conclusion is not altered by the fact that the postconviction court also rejected Petitioner's claim on the merits. See Sweet v. Sec'y, Dep't of Corr., 467 F.3d 1311, 1318 (11th Cir. 2006) ("[W]hen a state court unambiguously rules that a post-conviction petition is untimely under state law, [a federal court] must respect that ruling and conclude that the petition was not 'properly filed' for the purposes of § 2244(d)(2), regardless of whether the state court also reached the merits of one of the claims.").

at 324. "'[T]he habeas court must consider all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial.'" Rozzelle v. Sec'y, Fla. Dep't Corrs., 672 F.3d 1000, 1017 (11th Cir. 2012) (quoting House v. Bell, 547 U.S. 518, 538 (2006)).

Petitioner fails to satisfy the "exceedingly narrow" actual-innocence exception. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001). At trial, the prosecution proved that Petitioner murdered a sex worker in Jacksonville, Florida. Around 3:30 a.m. on May 19, 2011, witnesses heard a woman's "terrified scream" followed by a gunshot. Doc. 5-2 at 234-35, 244-45. The culprit had shot the victim once in the head with a .45 caliber handgun. Id. at 319, 392-93. Two witnesses saw a dark-colored, mid-size vehicle flee the scene of the shooting—the front yard of a vacant residence. Id. at 204-05, 246-47. Law enforcement found a "fresh," "wet" condom near the victim's feet. Id. at 266, 336, 406. Subsequent analysis showed that the condom contained Petitioner's semen and the victim's DNA. Id. at 344-47.

One week before the shooting, a sheriff's deputy had stopped Petitioner behind a "closed business" in Jacksonville. Id. at 356-57. Petitioner drove a "black four-door Saturn sedan" and had a Taurus .45 caliber handgun.[4] Id. at

---

[4] Petitioner showed the deputy a "concealed weapons permit." Doc. 5-2 at 363.

6

360, 366. After law enforcement learned that the condom contained Petitioner's semen, Petitioner agreed to speak with two detectives. Id. at 423-24. He claimed that sometime after the shooting, his car was "repo'd" and he sold his .45 caliber handgun to "a random white guy" at a gas station. Id. at 447-48. He also denied being in Florida at the time of the shooting even after the detectives told him the condom contained his semen. Id. at 445-47.

Petitioner now contends that he is actually innocent. In support, he alleges that trial counsel refused to call three witnesses—Gina Jordan, Detective Bryan Walcott, and Terry Bruce. Doc. 6 at 2; Doc. 5-12 at 9-14. As an initial matter, the testimony of these witnesses does not qualify as "new evidence." McQuiggin, 569 U.S. at 386. Counsel was aware of each witness but elected not to present their testimony at trial. Doc. 5-12 at 705-17. "Evidence is not 'new' if it was available at trial, but a petitioner merely chose not to present it to the jury." Goldblum v. Klem, 510 F.3d 204, 226 n.14 (3d Cir. 2007); see also Osborne v. Purkett, 411 F.3d 911, 920 (8th Cir. 2005) ("Evidence is only 'new' if it was not available at trial and could not have been discovered earlier through the exercise of due diligence."). The "failure of [Petitioner's] trial counsel to present testimony from . . . witness[es] known at the time of trial" is insufficient to satisfy the actual-innocence exception. Jackson v. Davenport, No. 2:13-cv-

7

111-WHA, 2015 WL 10491200, at *3 (M.D. Ala. Dec. 11, 2015), adopted by 2016 WL 1060810 (M.D. Ala. Mar. 17, 2016).

Even if the proposed testimony qualified as "new evidence," Petitioner's claim of actual innocence still fails because he cannot show that "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." McQuiggin, 569 U.S. at 386. According to Petitioner, Jordan would have testified that she saw "a dark brown Cadillac fleeing the scene a short time after hearing a gunshot." Doc. 5-12 at 9. But as counsel explained at the postconviction evidentiary hearing, Jordan gave "conflicting statements to the police." Id. at 708. She told one officer that "she heard one gunshot, . . . went outside[,] and did not see anything else." Id. at 706. She then told a different officer that she "went outside" after hearing a "gunshot" and saw a "brown Cadillac." Id. at 707. Given these inconsistent statements, a "reasonable juror would not likely find [Jordan] to be" a credible witness. Caracciolo v. McDonough, 456 F. Supp. 2d 1240, 1260-61 (S.D. Fla. 2006).

Detective Walcott's proposed testimony likewise fails to establish Petitioner's innocence. The victim was found naked from the waist down, and law enforcement did not recover a purse or wallet. Doc. 5-2 at 256-57. Detective Walcott investigated James Johnson and his girlfriend Carrie Marino, two friends of the victim who had "spent some time" with her in the hours before

the murder. Doc. 5-12 at 710-11. Detective Walcott searched Johnson's truck and found "a pair of female jeans and a purse." Id. at 712. But the jeans had "no tears, no signs of a struggle, no bloodstains." Id. Moreover, Detective Walcott spoke with "other people" associated with the victim and learned that the purse "didn't match the description of the victim's purse." Id. at 713. Additionally, "Johnson was elsewhere with . . . Marino at the time of the murder." Id. at 82. As the postconviction court explained, because there was no evidence that the jeans or purse "belong[ed] to the victim," any testimony about these items would have been "immaterial." Id.

Finally, Bruce's proposed testimony is insufficient to satisfy the actual-innocence exception. At his deposition, Bruce stated that approximately thirty minutes before the shooting, he saw a car with two unidentified occupants pick up a woman who fit the victim's description. Id. at 715. But Bruce also indicated that he "couldn't testify to what he was [saying] . . . because it had been such a long time." Id. at 717. As counsel put it, Bruce's "memory" was "not . . . good at that point." Id. And as the postconviction court found, "Bruce's testimony would not have cast doubt on [Petitioner's] guilt; rather, it would have merely raised the possibility that [he] committed the crime with an accomplice." Id. at 83.

For all these reasons, Petitioner fails to establish that he is entitled to the actual-innocence exception. Indeed, Petitioner offers nothing to rebut the most important evidence against him—the fresh condom next to the victim with

9

Petitioner's sperm and the victim's DNA, Petitioner's possession of a .45 caliber handgun when the victim was shot with a .45 caliber bullet, his disposal of the handgun after the shooting, and his possession of a vehicle matching the description of the vehicle seen fleeing the murder scene. Given the substantial evidence of his guilt and the minimal probative value of the proposed witness testimony, Petitioner fails to show that "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt."[5] McQuiggin, 569 U.S. at 386.

Accordingly, it is

**ORDERED**:

1.     The Petition (Doc. 1) and this case are **DISMISSED with prejudice**.

2.     If Petitioner appeals, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[6]

---

[5] Petitioner does not argue that he is entitled to equitable tolling, and he alleges no facts supporting due diligence or extraordinary circumstances. See Lawrence v. Florida, 549 U.S. 327, 336 (2007); Cadet v. Fla. Dep't of Corr., 853 F.3d 1216, 1221 (11th Cir. 2017).

[6] The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To

10

3.     The **Clerk** shall enter judgment dismissing this case with prejudice, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 16th day of April, 2026.



TIMOTHY J. CORRIGAN
Senior United States District Judge

TpaP-2
c:
Andre Deshon Jenkins, #D45903
Counsel of Record

---

make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.

11